UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:16-cv-563-FDW

| WILLIAM CARAWAN, JR.,      | ) |       |
|----------------------------|---|-------|
| Plaintiff,                 | ) |       |
| vs.                        | ) | **ORDER** |
| FNU MITCHELL, et al.,      | ) |       |
| Defendants.                | ) |       |

**THIS MATTER** is before the Court on initial review of Plaintiff's Complaint, (Doc. No. 1). Also pending is Plaintiff's "Motion to Have Civil Summons Served on Defendants by US Marshal Services or by Other Legal Means." (Doc. No. 5). On August 18, 2016, this Court entered an order granting Plaintiff in forma pauperis status and waiving the initial filing fee. (Doc. No. 6).

**I.  BACKGROUND**

Pro se Plaintiff William Carawan, Jr., is a North Carolina prisoner incarcerated at Tabor Correctional Institution in Tabor City, North Carolina. Plaintiff filed this action on July 21, 2016, pursuant to 42 U.S.C. § 1983, naming as Defendants (1) FNU Mitchell, identified as the Superintendent at Lanesboro Correctional Institution; (2) FNU Hammond, identified as the Programs Supervisor at Lanesboro; (3) FNU Bennett, identified as a Programmer at Lanesboro; (4) FNU Mullis, identified as a Lieutenant at Lanesboro; (5) FNU Jarman, identified as a teacher at Lanesboro and South Piedmont College; (6) FNU Mullis, identified as a Captain at Lanesboro; and (7) FNU Tillman, identified as a Correctional Officer at Lanesboro. (Doc. No. 1). In the Complaint, Plaintiff alleges that, while incarcerated at Lanesboro, he was forced to choose

1

between attending class to earn gain-time credits and attending worship services to practice his religion, Islam. More specifically, Plaintiff alleges the following:

> Plaintiff was forced to choose between getting infractions for not going to school, even though staff could allow the plaintiff to attend the class immediately after service or going to his religious services. Plaintiff had a right to both the gained time earned for going to school and for the practice of Islam, yet staff threatened plaintiff with an infraction if he missed 6 one half day periods. Services for Muslims is 1 hour, from roughly 1:15 pm to 2:15 pm, leaving 2 hours of school, which Mr. Jarmon the teacher wouldn't allow. I was also not allowed to pray while seated at my desk even though it caused no distraction of any sort. Mr. Mitchell, Mrs. Hammond, Mrs. Bennett, Lt. Mullis, Cpt. Mullis, Mr. Jarman, and the school officer c/o Tillman all acted on such practices and policies giving Plaintiff an ultimatum: religious practice or school, and threatened to write plaintiff up for absences forced by staff as plaintiff could've easily went back to class utilizing the hour or so left. This act occurred between January 6, 2015, and mid-February 2015 and is still being practiced toward all student inmates who practice their religion to this date.

(Id. at 2, 4-5). Plaintiff alleges that, in forcing Plaintiff to choose between taking classes and practicing his religion, Defendants violated his First Amendment right to the free exercise of his religion, and his rights under the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), 42 U.S.C. § 2000cc et seq.[1] As relief, Plaintiff seeks declaratory and injunctive relief, as well as compensatory damages. (Id. at 5). Plaintiff specifically seeks an order from the Court instructing Lanesboro officials to "stop forcing students to miss school time or services and for students of the Islamic faith to be able to pray as it is a pillar of Islam recognized in policy." (Id.).

---

[1] Plaintiff also purports to bring a Fourteenth Amendment "due process" claim, alleging that he "was not allowed to attend one service nor was I allowed to pray and these decisions made did not involve due process at all." (Doc. No. 1 at 7). Because Plaintiff's First Amendment right to exercise his religion arises through the due process clause of the Fourteenth Amendment, the Court therefore analyzes this claim as part and parcel of his First Amendment claim.

## II. STANDARD OF REVIEW

Because Plaintiff is proceeding in forma pauperis, the Court must review the Complaint to determine whether it is subject to dismissal on the grounds that it is "frivolous or malicious [or] fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2). In its frivolity review, this Court must determine whether the Complaint raises an indisputably meritless legal theory or is founded upon clearly baseless factual contentions, such as fantastic or delusional scenarios. Neitzke v. Williams, 490 U.S. 319, 327-28 (1989). A pro se complaint must be construed liberally. Haines v. Kerner, 404 U.S. 519, 520 (1972). However, the liberal construction requirement will not permit a district court to ignore a clear failure to allege facts in his Complaint which set forth a claim that is cognizable under federal law. Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990).

## III. DISCUSSION

As noted, Plaintiff alleges claims pursuant to both RLUIPA and the First Amendment. Beginning with plaintiff's RLUIPA claim, RLUIPA provides, in part: "No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person—(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc-1(a). "RLUIPA thus protects institutionalized persons who are unable freely to attend to their religious needs and are therefore dependent on the government's permission and accommodation for exercise of their religion." Cutter v. Wilkinson, 544 U.S. 709, 721 (2005). Under RLUIPA, the plaintiff bears the initial burden of showing that the challenged policy substantially burdens his exercise of his religion.

See 42 U.S.C. § 2000cc-2(b); Holt v. Hobbs, 135 S. Ct. 853, 862 (2015). The statute defines "religious exercise" as "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-5(7)(A); Smith v. Ozmint, 578 F.3d 246, 251 (4th Cir. 2009). A "'substantial burden' is one that puts substantial pressure on an adherent to modify his behavior and to violate his beliefs, [] or one that forces a person to choose between following the precepts of her religion and forfeiting governmental benefits, on the one hand, and abandoning one of the precepts of her religion on the other hand." Lovelace v. Lee, 472 F.3d 174, 187 (4th Cir. 2006) (quotations, citation, and alterations omitted).

Once the inmate makes a prima facie showing, the burden shifts to the government to prove that "the burden in question is the least restrictive means of furthering a compelling governmental interest." Ozmint, 578 F.3d at 250. "'RLUIPA adopts a . . . strict scrutiny' standard." Couch v. Jabe, 679 F.3d 197, 203 (4th Cir. 2012) (quoting and citing Lovelace, 472 F.3d at 198 n.8). Under RLUIPA, the court must give "due deference to the experience and expertise of prison and jail administrators in establishing necessary regulations and procedures to maintain good order, security and discipline, consistent with consideration of costs and limited resources." Cutter, 544 U.S. at 723 (quotation omitted). "However, 'a court should not rubber stamp or mechanically accept the judgments of prison administrators.' . . . Rather, due deference will be afforded to those explanations that sufficiently 'take[] into account any institutional need to maintain good order, security, and discipline.'" Couch, 679 F.3d at 201 (quoting Lovelace, 472 F.3d at 190).

As for Plaintiff's First Amendment claim, the Free Exercise Clause of the First Amendment states that "Congress shall make no law respecting an establishment of religion." U.S. CONST. amend. I. The Supreme Court has applied the First Amendment to the states

4

through the Fourteenth Amendment. See Everson v. Bd. of Educ., 330 U.S. 1, 15 (1947). To state a free exercise claim under the First Amendment, a plaintiff must allege facts sufficient to show that he held a sincere religious belief, and that the official action or regulation substantially burdened his exercise of that belief. Hernandez v. Comm'r, 490 U.S. 680, 699 (1989). A prison policy that substantially burdens an inmate's ability to practice his religion withstands a First Amendment challenge when it is "reasonably related to legitimate penological interests." O'Lone v. Estate of Shabazz, 482 U.S. 342, 349 (1987) (quoting Turner v. Safley, 482 U.S. 78, 89 (1987)). In deciding whether a defendant's actions can be sustained as reasonably related to legitimate penological interests, the court must consider the following four factors: (1) whether there is a valid, rational connection between the regulation and the legitimate penological interest; (2) whether there are alternative means of exercising the right in question that remain open to prisoners; (3) the impact accommodation of the asserted constitutional right would have on guards and other inmates and on the allocation of prison resources; and (4) whether ready alternatives exist which accommodate the right and satisfy the penological interest. See Turner, 482 U.S. at 89-90. Claims brought under the First Amendment are subject to a less demanding standard of proof than claims brought under RLUIPA, with RLUIPA claims requiring "strict scrutiny instead of reasonableness." See Lovelace, 472 F.3d at 199 n.8.

The Court finds that Plaintiff's claims are not clearly frivolous and therefore survive initial review. To the extent, however, that Plaintiff seeks injunctive relief, that claim is moot because Plaintiff has been transferred away from Lanesboro.

**IV.   CONCLUSION**

For the reasons stated herein, the Court finds that Plaintiff's claims survive initial screening by the Court in that they are not clearly frivolous.

5

**IT IS, THEREFORE, ORDERED that:**

1. Plaintiff's action survives initial review under 28 U.S.C. § 1915(e).

2. **IT IS FURTHER ORDERED THAT** the Clerk is directed to mail summons forms to Plaintiff for Plaintiff to fill out and return for service of process on Defendants. Once the Court receives the summons forms, the Clerk shall then direct the U.S. Marshal to effectuate service on Defendants. The Clerk is respectfully instructed to note on the docket when the forms have been mailed to Plaintiff.

3. Plaintiff's Motion to Have Civil Summons Served on Defendants by US Marshal Services or by Other Legal Means, (Doc. No. 5), is **GRANTED**.

Signed: December 20, 2016

Frank D. Whitney
Chief United States District Judge