WILLIAM CARAWAN, JR.,       )
                            )
       **Plaintiff,**          )
                            )
vs.                         )       **ORDER**
                            )
FNU MITCHELL, et al.,        )
                            )
       **Defendants.**       )
_____)

     **THIS MATTER** comes before the Court on a Motion for Summary Judgment by

Defendants Takesha Hammond, Jerline Bennett, Darrell Mullis, Patrick Jarman, Randy Mullis,

and Ruchia Tillman. (Doc. No. 38).

### I.     BACKGROUND

### A.     Procedural Background

     Pro se Plaintiff William Carawan, a North Carolina state inmate currently incarcerated at

Tabor Correctional Institution, filed this action on July 21, 2016, pursuant to 42 U.S.C. § 1983,

alleging violations of his rights under the First Amendment and the Religious Land Use and

Institutionalized Persons Act ("RLUIPA"), codified as 42 U.S.C. § 2000cc et seq. Plaintiff

alleges that, between January 6, 2015, and mid-February 2015, while he was housed at

Lanesboro Correctional Institution, he was not permitted to freely practice Islam and earn

sentence credits for going to school when Defendants threatened him with an infraction if he

missed six one-half day periods. (Doc. No. 1). Plaintiff further alleges that he was not allowed

to pray while seated at his desk in class even though it did not cause a distraction during the

class, in violation of his federal constitutional rights. Plaintiff requests declaratory and injunctive relief and compensatory damages. (Id.)

Defendants filed the pending summary judgment motion on March 23, 2018. (Doc. No. 38). Defendants have attached the affidavit of Defendant Takesha Hammond, with attached Exhibits A through J; the affidavit of Defendant Ruchia Tillman; and Defendants' Responses to Plaintiff's First Set of Interrogatories, attached as Exhibit 1. (Doc. No. 40).

On March 27, 2018, this Court entered an order in accordance with Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), advising Plaintiff of the requirements for filing a response to the summary judgment motion and of the manner in which evidence could be submitted to the Court. (Doc. No. 41). Plaintiff did not respond to the summary judgment motion, and the time to do so has passed.[1] This matter is therefore ripe for disposition.

### B.    Factual Background

### 1.    Plaintiff's Allegations

Plaintiff's allegations are summarized as follows:

Plaintiff alleges that his constitutional rights to both earn gain/earned time for going to school and freely practice Islam were denied because Defendants threatened him with an infraction if he missed six, one-half day periods. Plaintiff further alleges that religious services for Muslims at Lanesboro are one hour, from about 1:15 p.m. to 2:15 p.m., only leaving two hours for school, which Defendant Jarmon would not allow. Plaintiff further alleges that he was not allowed to pray while seated at his desk in class even though it did not cause a distraction, in

---

[1] Because Plaintiff did not file a response to the summary judgment motion, he is deemed to have abandoned his claims. See Crosby v. Gastonia, 635 F.3d 634, 637 n.3 (4th Cir. 2011). In an abundance of caution, however, the Court will address the merits of Plaintiff's claims.

violation of his federal constitutional rights.  Plaintiff alleges that these unconstitutional acts

occurred between January 6, 2015, and mid-February 2015.  (Doc. No. 1 at pp. 2-5).

## 2.    Defendants' Summary Judgment Materials

Defendants' summary judgment materials include the pleadings and all attachments and

the affidavit of Defendant Takesha Hammond, with attached Exhibits A through J; the affidavit

of Defendant Ruchia Tillman; and Defendants' Responses to Plaintiff's First Set of

Interrogatories, attached as Exhibit 1.  These documents show the following events and

circumstances:

Lanesboro's Standard Operating Procedures ("SOP") provide written guidance to

Lanesboro administrators, chaplains, and correctional staff concerning religious practices and

religious paraphernalia.  First, Lanesboro's SOP titled "Chaplaincy/Religious Services"

provides:

> The religious program at Lanesboro Correctional Institution is designed to furnish
> opportunities for inmates to worship, to receive religious instruction, and to
> receive spiritual guidance or pastoral care.  The program will seek to provide
> moral, spiritual and social counseling, and ministerial services to the inmates.
> The program will seek to help men grow into self-respecting and useful citizens.
> Lanesboro Correctional Institution's Chaplaincy/Religious programs will offer
> religious services and other opportunities on a regular basis.  Religious
> opportunities include study sessions, regular worship services, books, literature,
> and a utilization of correspondence courses.  As appropriate, the religious
> program at Lanesboro Correctional Institution will utilize community resources
> and volunteers to assist with religious activities.

(Doc. No. 40-1 at ¶ 6: Hammond Aff., Ex. B at p. 1).  Lanesboro's SOP titled

"Chaplaincy/Religious Services" further provides as follows:  "Religious programs may include

but are not limited to . . . Jumah prayer, Ramadan activities."  (Id. at ¶ 7, Ex. B at p. 7).

Further, NCDPS Division of Prisons ("DOP") DOP Policy and Procedures, Chapter H,

Section .0101(c), provides that: "[p]risons shall provide access for approved religious services or

practices and pastoral care in all prison facilities. Inmate participation shall be voluntary." (Id. at ¶ 8, Ex. C at p. 1). Section .0103(c) provides as follows:

> Specific religious practices policies and procedures are detailed in the Prisons' Religious Practices Reference Manual. This manual includes a list of the current faith practices that are now officially recognized by Prisons. It also includes a brief description of the basic beliefs, authorized practices, worship procedures and authorized religious items associated with each faith.

(Id. at ¶ 9, Ex. C at p. 3). NCDPS recognizes Islam as an approved religion. (Id. at ¶ 10, Ex. D).

On October 29, 2014, Plaintiff was transferred from Warren Correctional Institution to Lanesboro. (Id. at ¶ 5, Ex. A). On August 18, 2016, Plaintiff was transferred from Lanesboro to Tabor Correctional Center. (Id.). Defendants' summary judgment materials show that Plaintiff registered to attend the Custodial Training and Environmental Services class (a full-time educational program that is eligible for an award of earned/gain time sentence credits) on January 6, 2015. (Id. at ¶ 11, Ex. E). School hours were 7:15 a.m. to 10:15 a.m. and 12:15 p.m. to 3:15 p.m. (Id. at ¶ 13). NCDPS pays the registration fee for each assigned inmate, and the classes are voluntary. (Id. at ¶ 12). No one forces an inmate to sign up for classes, but participating inmates are expected to attend the classes every day. (Id.). The School Rules and Safety Regulations provide that three unexcused absences could result in withdrawal from a class. (Id.). Inmates are told about the class schedule and any potential conflicts with the schedule before the class begins. (Doc. No. 40-2 at ¶ 6). A write-up and religious services are unexcused absences. (Id.). Plaintiff provided his signature agreeing to the rules. (Doc. No. 40-1 at ¶ 12, Ex. 7).

According to Defendants, allowing inmates in and out of class is a disruption. The rules related to religious services and unexcused absences are not intended to discriminate against Plaintiff or the Muslim inmate group. (Doc. No. 40-1 at ¶ 17). The summary judgment

materials show that Defendants did not threaten to put Plaintiff in segregation for trying to go to religious services from class. (Doc. No. 40-2 at ¶ 10; Ex. 1 at pp. 5, 13, 21, 29). Moreover, Plaintiff's infraction history shows he was not disciplined for any of his absences from class. (Doc. No. 40-1 at ¶ 12, Ex. G). Plaintiff's class attendance that shows Plaintiff missed the Friday afternoon class each week, which was the same time his religious service took place. (Doc. No. 40-2 at ¶ 7; Doc. No. 40-1 at ¶ 13, Ex. H). Plaintiff completed the class and was awarded sentence credits and five Merit days. (Doc. No. 40-1 at ¶¶ 14-15, Exs. I and J).

Finally, Defendants contend on summary judgment that, although Plaintiff alleged in his Complaint that he was forced to miss religious services because of his class schedule, Plaintiff was not forced to do anything. (Id. at ¶ 13; Ex. 1 pp. 3, 11, 18-19, 27). Defendants Hammond and Tillman further assert in their affidavits that they did not have anything to do with how the religious services are scheduled. (Doc. No. 40-2 at ¶ 7; Doc. No. 40-1 at ¶ 13).

## II.    STANDARD OF REVIEW

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is material only if it might affect the outcome of the suit under governing law. Id.

The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal citations omitted).

Once this initial burden is met, the burden shifts to the nonmoving party. The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." <u>Id.</u> at 322 n.3. The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment. <u>Id.</u> at 324. The nonmoving party must present sufficient evidence from which "a reasonable jury could return a verdict for the nonmoving party." <u>Anderson</u>, 477 U.S. at 248; <u>accord</u> <u>Sylvia Dev. Corp. v. Calvert County, Md.</u>, 48 F.3d 810, 818 (4th Cir. 1995).

When ruling on a summary judgment motion, a court must view the evidence and any inferences from the evidence in the light most favorable to the nonmoving party. <u>Anderson</u>, 477 U.S. at 255. "'Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'" <u>Ricci v. DeStefano</u>, 129 S. Ct. 2658, 2677 (2009) (quoting <u>Matsushita v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986)).

## III.  DISCUSSION

### A.  Standard of Review under the RLUIPA and the First Amendment

As noted, Plaintiff alleges claims pursuant to both RLUIPA and the First Amendment. Beginning with plaintiff's RLUIPA claim, RLUIPA provides, in part: "No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person—(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest."[2]  42 U.S.C. § 2000cc-1(a). "RLUIPA thus protects

---

[2] Further, RLUIPA does not authorize damages claims against a state official, whether sued in his/her individual or official capacity; thus, Plaintiff's only potential remedies are equitable. <u>See</u>

institutionalized persons who are unable freely to attend to their religious needs and are therefore dependent on the government's permission and accommodation for exercise of their religion." Cutter v. Wilkinson, 544 U.S. 709, 721 (2005).

Under RLUIPA, the plaintiff bears the initial burden of showing that the challenged policy substantially burdens his exercise of his religion. See 42 U.S.C. § 2000cc-2(b); Holt v. Hobbs, 135 S. Ct. 853, 862 (2015). The statute defines "religious exercise" as "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-5(7)(A); Smith v. Ozmint, 578 F.3d 246, 251 (4th Cir. 2009). A "'substantial burden' is one that puts substantial pressure on an adherent to modify his behavior and to violate his beliefs, [] or one that forces a person to choose between following the precepts of her religion and forfeiting governmental benefits, on the one hand, and abandoning one of the precepts of her religion on the other hand." Lovelace v. Lee, 472 F.3d 174, 187 (4th Cir. 2006) (quotations, citation, and alterations omitted).

Once the inmate makes a prima facie showing, the burden shifts to the government to prove that "the burden in question is the least restrictive means of furthering a compelling governmental interest." Ozmint, 578 F.3d at 250. "'RLUIPA adopts a . . . strict scrutiny' standard." Couch v. Jabe, 679 F.3d 197, 203 (4th Cir. 2012) (quoting and citing Lovelace, 472 F.3d at 198 n.8). Under RLUIPA, the court must give "due deference to the experience and expertise of prison and jail administrators in establishing necessary regulations and procedures to maintain good order, security and discipline, consistent with consideration of costs and limited resources." Cutter, 544 U.S. at 723 (quotation omitted). "However, 'a court should not rubber

---

Wall v. Wade, 741 F.3d 492, 496 n.5 (4th Cir. 2014).

stamp or mechanically accept the judgments of prison administrators.' . . . Rather, due deference will be afforded to those explanations that sufficiently 'take[] into account any institutional need to maintain good order, security, and discipline.'" Couch, 679 F.3d at 201 (quoting Lovelace, 472 F.3d at 190).

As for Plaintiff's First Amendment claim, the Free Exercise Clause of the First Amendment states that "Congress shall make no law respecting an establishment of religion." U.S. CONST. amend. I. The Supreme Court has applied the First Amendment to the states through the Fourteenth Amendment. See Everson v. Bd. of Educ., 330 U.S. 1, 15 (1947). To state a free exercise claim under the First Amendment, a plaintiff must allege facts sufficient to show that he held a sincere religious belief, and that the official action or regulation substantially burdened his exercise of that belief. Hernandez v. Comm'r, 490 U.S. 680, 699 (1989). A prison policy that substantially burdens an inmate's ability to practice his religion withstands a First Amendment challenge when it is "reasonably related to legitimate penological interests." O'Lone v. Estate of Shabazz, 482 U.S. 342, 349 (1987) (quoting Turner v. Safley, 482 U.S. 78, 89 (1987)).

In deciding whether a defendant's actions can be sustained as reasonably related to legitimate penological interests, the court must consider the following four factors: (1) whether there is a valid, rational connection between the regulation and the legitimate penological interest; (2) whether there are alternative means of exercising the right in question that remain open to prisoners; (3) the impact accommodation of the asserted constitutional right would have on guards and other inmates and on the allocation of prison resources; and (4) whether ready alternatives exist which accommodate the right and satisfy the penological interest. See Turner, 482 U.S. at 89-90. Claims brought under the First Amendment are subject to a less demanding

8

standard of proof than claims brought under RLUIPA, with RLUIPA claims requiring "strict scrutiny instead of reasonableness." See Lovelace, 472 F.3d at 199 n.8.

### 1. Plaintiff's Allegations Related to His Denial of Gain/Earned Time Credit

First, as to Plaintiff's allegations related to his denial of gain/earned time credit because of the practice of his faith, Plaintiff does not specifically identify what service he alleges he was forced not to attend, nor has he outlined the importance of the attending the religious service. Assuming that Plaintiff is referring to the Jumah service held on Fridays, Plaintiff does not specifically state that his practice of Islam requires him to attend the Jumah service. In fact, the undisputed evidence on summary judgment shows that Plaintiff was not forced to miss religious services because of his class schedule; he attended the religious service; he was not disciplined for attending the religious service; and he was awarded sentence credits and merit time for his successful completion of the Custodial Training and Environmental Services class. (Doc. No. 40-1 at ¶¶ 12-15, Exs. F-H; Doc. No. 40-2 at ¶ 7; Ex. 1 at pp. 3, 11, 18-19, 27).

Here, Plaintiff simply assumes that the Lanesboro policy related to unexcused absences amounts to a constitutional violation, but he fails to identify how this policy caused him to modify his behavior or violate his beliefs. See Krieger v. Brown, 496 F. App'x 322, 325 (4th Cir. 2012) (unpublished) (affirming the grant of summary judgment in favor of prison officials on both First Amendment and RLUIPA claims where an inmate failed "to demonstrate that his behavior was modified and his religious beliefs were violated by the deprivation" of sacred items and a group worship setting which he claimed were necessary for his practice of Asatru).

Further, the summary judgment materials show that Defendants did not threaten to put Plaintiff in segregation for trying to go to religious services from class, nor was he disciplined for any of his absences. (Doc. No. 40-1 at ¶ 12, Ex. G, Doc. No. 40-2 at ¶ 10; Ex. 1 pp. 5, 13,

21, 29).  A substantial burden must be more than an inconvenience to an inmate's religious practice.  Smith v. Allen, 502 F.3d 1255, 1278 (11th Cir. 2007), abrogated on other grounds, Sossamon v. Texas, 563 U.S. 277 (2011).  Prison policy that places restrictions on religious exercise more difficult, but which does not pressure the adherent to violate his religious beliefs or abandon one of the precepts of his religion, is not a substantial burden.  See Living Water Church of God v. Charter Twp. of Meridian, 258 F. App'x 729, 739 (6th Cir. 2007); Dellinger v. Clarke, 172 F. Supp. 3d 898, 902-03 (W.D. Va. 2016).  Defendants contend that, while they are not responsible for the Lanesboro policy related to class attendance and unexcused absences, Plaintiff was able to complete the class, be awarded sentence credits and merit days, attend religious services, and pray in class quietly.  Defendants further contend that Plaintiff's attendance at the class was voluntary and not mandatory, so Plaintiff was clearly not forced to disobey his religious precepts or engage in conduct that seriously violated his religious beliefs.

The Court finds that Defendants have presented evidence on summary judgment showing that they did not violate Plaintiff's rights under either RLUIPA or the First Amendment based on Plaintiff's allegations related to his denial of gain/earned time credit because of the practice of his faith.  Plaintiff has not come forward with any evidence on summary judgment raising a genuine dispute of material fact as to whether his rights are being violated under the First Amendment or RLUIPA as to this part of his claim.  Thus, Defendants are entitled to summary judgment as to this part of his claim.

2. **Plaintiff's Allegations Related to Defendants' Alleged Refusal to Allow Plaintiff to Pray While Seated at His Desk in Class**

Plaintiff also alleged in the Complaint that Defendants violated his rights under RLUIPA and the First Amendment to refusing to allow him to pray while seated at his desk in class even

though it did not cause a distraction. Defendants presented evidence on summary judgment showing that once, while Defendant Jarman was in the middle of a lecture, Plaintiff got out of his seat without saying a word and began to move chairs and a desk in the classroom. Defendant Jarman asked Plaintiff to stop moving the desk and chairs because he was disturbing the class. Plaintiff told Defendant Jarman that he was preventing Plaintiff from praying. (Doc. No. 40-2 at ¶ 8). Defendant Jarman reported the incident to Defendant Tillman, and Defendant Tillman told Plaintiff that it was disruptive during the class while the instructor was teaching for him to get up and move desks around and walk to the wall. Defendant Tillman asserts that when he told Plaintiff to stop moving the desk and chairs and walking to the wall because he was disturbing the class, he (Tillman) was not intending to discriminate against Plaintiff or the Muslim inmate group. (Id. at ¶ 9). Defendants deny ever telling Plaintiff that he could not quietly pray at his desk during the class. (Id. at ¶ 10; Ex. 1 at pp. 5, 12, 20, 28). Rather, Plaintiff was instructed to not move the chairs and desk or disrupt the instructor. (Doc. No. 40-2 at ¶¶ 8-10; Ex. 1 at pp. 5, 12, 20, 28).

The Court finds that Defendants have presented evidence on summary judgment showing that they did not violate Plaintiff's rights under either RLUIPA or the First Amendment based on Plaintiff's allegation that he was not allowed to pray at his desk during class. Plaintiff has not come forward with any evidence on summary judgment raising a genuine dispute of material fact as to whether his rights are being violated under the First Amendment or RLUIPA as to this part of his claim. Thus, Defendants are entitled to summary judgment as to this part of his claim.[3]

---

[3] Defendant also raised qualified immunity as a defense to Plaintiff's excessive force claim. Because the Court has determined that there was no constitutional violation in the first instance, the Court does not need to determine whether Defendant is entitled to qualified immunity. Furthermore, as Defendants note, to the extent that Plaintiff has sued Defendants in their official

## IV.     CONCLUSION

Plaintiff has failed to raise a genuine dispute of material fact as to whether his rights under the First Amendment and RLUIPA were violated, and Defendants are therefore entitled to summary judgment.

**IT IS, THEREFORE, ORDERED** that:

1. Defendants' Motion for Summary Judgment, (Doc. No. 38), is **GRANTED**, and this action is dismissed with prejudice.

2. The Clerk is respectfully instructed to terminate this action.

Signed: June 20, 2018

Frank D. Whitney
Chief United States District Judge

---

capacities, Plaintiff Section 1983 claims against Defendants for damages are barred by the Eleventh Amendment. Lytle v. Griffith, 240 F.3d 404, 408 (4th Cir. 2001). Furthermore, because Plaintiff is no longer confined at Lanesboro, any possible claims for injunctive relief have been rendered moot. See Taylor v. Rogers, 781 F.2d 1047, 1049 (4th Cir. 1986) (holding that a prisoner's transfer mooted a request for declaratory and injunctive relief).